REC'D DEC - 2

2022 DEC 2 PM12:44 USDC-EDPA RECD CLERK

**In the United States District Court for the Eastern District of Pennsylvania**

**Jason L. Brown,**

**Plaintiff**

**v.** **Civ. No. 22-3199**

**Port Authority Transit Corporation, et al**

**Delaware River Port Authority,**

**Defendants**

**PLAINTIFF'S AMENDED COMPLAINT FOR RELIEF AND RESPONSE TO DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION (DOC. NO. 18)**

Plaintiff Jason L. Brown, pro se, hereby amends his complaint and files this response to the Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings. *See* Doc. No. 18, *Civ. No.* 22-3199 E.D.Pa. The plaintiff respectfully requests that this Court enter judgment in his favor against each defendant on all counts pursuant to 42 U.S.C. § 1981a(b)(3) and pleads the following against the defendants:

## I. Plaintiff's Amended Pleadings

### Count 1 (Against Port Authority) Harassment

1. As shown in Exhs. A-1 through A-3 the Port Authority used work practices that detail unwelcome conduct which created and balanced a work environment of discrimination directed towards race, color, and sex.

2. Management of the employer used the identity of a non-management employee to perform work duties on account of race and color, creating overtime through intimidation.

3. The employer limited movement at the work site and temporarily disabled one's employment and color by reducing access to permitted locations where plaintiff's identification could be used, more than likely because of complaints made about lack of work assignment, which the plaintiff had complained about to the department director.

4. The employer created an environment of harassment when one of its department directors only invited the plaintiff in for overtime, after making a complaint about the appearance of the work environment, which the public is subjected to. Other custodians could have been invited for overtime assignment to complete tasks related to the appearance of the work areas.

5. The department director then limited where my identification card could be used and cut off my id card at the time clock location after I started

accepting overtime due to his method of intimidation. My race and color were being monitored to discriminate against me. I had to request for a new id card and my new id card came without my race or color attached to it. *See* Exhs. A-1, A-2. Doc. No. 1, *Civ. No*. 22-3199; E.D.Pa.

6. I was then given a sticker which resembled my orientation photo to attach to my new id card. *See* Exh. A-1. Doc. No. 1, *Civ. No*. 22-3199; E.D.Pa.

7. The employer became in violation of federal statute 42 U.S.C. § 2000e-2(a)(2) on count of harassment when it singled me out only to work overtime and then limited my employment movement by cutting off my *work id badge at the time-clock* location. Although I had no control of where my id badge worked, it was an act of unwelcome conduct that led to practices related to race and color, which discrimination induced and or equal employment was reduced due to limiting where work badge could work at.

<u>Count 2 (Against Port Authority) Retaliation</u>

8. The Port Authority "PATCO" became in violation of federal statute 42 U.S.C. 2000e-2(a)(1)(2) when a department director sent an unwanted email documented as "test email" within my reviewable work email, in which it related to the educational portion of being a trade mechanic with the employer. The email was sent through my department's "car status group"

where informative communication is passed along amongst management and non-management employees. The "*car status group*" communicates about assignments that were completed in work areas and references an educational collection of what gets done by shop mechanics. *See* Exh. A-5. Doc. No. 1, *Civ. No*. 22-3199; E.D.Pa.

9. Months prior to this email, the person who sent the "test email" had verbally denied me the opportunity to participate in a tuition reimbursement program to obtain knowledge in and learn the HVAC trade. The tuition reimbursement program form was submitted to the department director who denied me face-to-face and sent in an email to human resources. *See* Exh. A-4. Doc. No. 1, *Civ. No*. 22-3199; E.D.Pa.

10. As the employer deoptimized my request to participate in the tuition reimbursement program by declining such privilege, utilizing such resource fell into the atmosphere of previous work practices experienced with the employer, which were all before the department director, and on his watch. After I made a complaint about the lack of work assignments, I became subjected to unlawful work practices that included my race and color as a bargaining tool to restrict me from opportunity or peace of mind; my work performance and moving about became limited and overly monitored. The retaliation I faced is in chronological order. The test email is the straw that

broke camel's back. *See* Exhs. A-1 through A-5. Doc. No. 1, *Civ. No*. 22-3199; E.D.Pa.

Count 3 & 4 (Against Port Authority) (Harassment & Retaliation)

11. There is proof that could help this Court determine that the nature of such employer is riddled with situations which placed me in a work environment of discrimination at both management and non-management levels. Co-workers felt the need to address my work ethics in a way which was harassing and retaliatory. I made inquiry with the U.S. Equal Employment Opportunity Commission and filed a charge with respect to Title VII of the Civil Rights Act of 1964. Although the EEOC made no determination in such charge, it gave the right to sue. *See* Exh. A-6. Doc. No. 1, *Civ. No*. 22-3199; E.D.Pa. *See also* Doc. No. 1, Pages 7 through 10 of 27. *Civ. No.* 22-3199; E.D.Pa.

12. Without knowing how the work schedule would be, co-workers of the same race and color made discriminatory complaints about my job assignments to management in front of my face where I could hear such complaints and demanded a consideration of being placed on the assignment that I was assigned to, which was the *"floor duty"* assignment.

13. The co-workers did not feel the need to address the situation with me prior to forcing all night-shift custodians into the office, but rather

inconsiderately grouped everyone with malicious intent to create a hostile work environment, without knowledge of Title VII of the Civil Rights Act of 1964 or federal statute 42 U.S.C. § 2000e-2(a)(1)(2) which prohibits discriminatory work practices that includes limiting or segregating employees in an adversely manner such harassment as displayed in this instance. Black co-workers felt the need to set the pace for an employee based on the continuity of recognizing an assignment being given to one black employee, rather than rotating employees for the *"floor duty"* assignment.

Counts 1 & 2 (Against DRPA)

14. As shown in Exh. A-7, DRPA, the agency portion of the employer and (2) defendants felt the need to address me through U.S. Mail inappropriately by displaying my own personal information such as my personal email address visible without permission. *See* Exh. A-7. Doc. No. 1, *Civ. No*. 22-3199; E.D.Pa.

15. As stated in federal statute 42 U.S.C. § 2000e-2(b) employment agencies are prohibited from classifying the employment of an individual based on his or her race, color, religion, sex, or national origin.

16. DRPA, without permission, made unauthorized use of my personal email and classified an employment matter with intentional disregard for my color and race which is supported by such personal email address. See A-7.

17. It is unknown why the employment agency displayed my personal email address on its correspondence, but complaints were previously made to the agency about the Port Authority, and this act falls in the description of retaliation due to its sudden account of happening without reason and authorization. There is unnecessary scrutiny and a creation of difficulty at hand within my role of employment. There is harassment of the mind and retaliation towards such individual.

## II.   Entitlement to Judgment as a Matter of Law

As a matter of law, a party may be entitled to the recovery of damages pursuant to the sections mentioned under 42 U.S.C. § 1981a(a)(1). The plaintiff is entitled to recovery of damages applicable to violations of 42 U.S.C. § 2000e-2 and Title VII of the Civil Rights Act of 1964. *See* also 42 U.S.C. § 1981a(b)(3) for limitations.

## III. Relief Sought

This civil action was brought to remedy the behaviors and experiences encountered due to the defendants of this civil action. Both defendants work together to provide employment opportunity, but such opportunity has developed employment practices that are contrary to regulated employment practices. Employment has not provided the best mental state available; going to work and going home free of stress has been challenged by the defendants.

The defendants have failed to respond to the content of the accompanying documents which make the allegations described in this civil action true. Each allegation stated in this amended complaint is matched by a supporting document and could lead to an expert testimony in favor of the plaintiff in the event trial was to be held.

In the event this civil action issues a judgment in favor of the plaintiff it must determine the exact number of employees to calculate for limitations on damages pursuant to 42 U.S.C. § 1981a(b)(3). Attached to this amended complaint is (Exh A-9) an accompanying document revealing the number of employees in total between the two defendants. Also, attached (Exh. A-10) is a photocopy of a page from the collective bargaining agreement revealing the total amount of employees

under the contract at the Port Authority when the plaintiff became hired on July 23, 2019. *See* Exhs. A-9, A-10.

The plaintiff seeks that this Court grant the following relief and enter judgment in favor of the plaintiff where the following amounts to be paid to the plaintiff by the defendants:

1. This Court enter judgment pursuant to 42 U.S.C. § 1981a(b)(3)(C) in the amount of $200,000.00 separately, against the Port Authority Transit Corporation for Counts 1, 2, 3, 4 and violations of 42 U.S.C. § 2000e-2 in favor of the plaintiff. *See paragraphs* 1-13.

2. This Court enter judgment pursuant to 42 U.S.C. § 1981a(b)(3)(D) in the amount of $300,000.00 separately, against the Delaware River Port Authority for Counts 1 and 2, and violations of 42 U.S.C. 2000e-2 in favor of the plaintiff. *See paragraphs* 14-17.

3. Grant any other relief it deems appropriate.

WHEREFORE, Plaintiff Jason L. Brown, pro se, seeks that this Court enter judgment in favor of the plaintiff and award Monetary Damages to be recovered from such defendants pursuant to 42 U.S.C. § 1981a(B)(3) and its appropriate section limiting the amount recoverable in damages.

## CERTIFICATE OF SERVICE

I hereby certify that on **December 2, 2022**, a true and original copy of the **Plaintiff's Amended Complaint and Response to Defendant's Memorandum of Law in Opposition (Doc. No. 18)** was served, upon the following:

1. United States Clerk of Court
   601 Market Street #2609
   Philadelphia, PA 19106

2. Marjorie Obod
   Patrick Hamlet
   DILWORTH PAXSON LLP
   1500 Market Street, Suite 3500E
   Philadelphia, PA 19102
   mobod@dilworthlaw.com
   phamlet@dilworthlaw.com
   (215) 575-7000

*Counsel for Defendants Delaware River Port Authority and Port Authority Transit Corporation*

Respectfully Submitted,

Jason L. Brown
1 Jefferson Street
Apt. 117
Clifton Heights, PA 19018
Phone: 1(267) 310-6232
Email: jaybrown042084@gmail.com


Respectfully Submitted,

Jason L. Brown

Pro Se – Plaintiff

1 Jefferson Street

Apt 117

Clifton Heights, PA 19018

Phone: 1(267) 310-6232

Email: jaybrown042084@gmail.com



DELAWARE RIVER PORT AUTHORITY
of Pennsylvania and New Jersey

HOME | EMPLOYMENT OPPORTUNITIES | ABOUT US

Employment Opportunities

Search Current Openings

EMPLOYEES Internal Job Openings

Applicant Statement

Create a Job Agent

Update Your Profile

Update Job Agent

# STEWARDSHIP. SERVICE. COMMUNITY.

## Employment Process

DRPA and PATCO currently employs approximately 861 employees in various union and non-union positions throughout the Authority. If you are interested in applying for any vacant position with DRPA or PATCO, you first **must** complete in full the **online pre-application form.**

**If you meet the minimum qualifications of the position for which you are applying, you will be contacted and asked to complete the full online application.**

Remember, you first **must** complete the **online pre-application form.** Resumes also should be uploaded at this time.

In addition, applicants are required to sign an "Applicant Statement" certifying that they are not related to any current or former Commissioner or Officer or any current employee of DRPA or PATCO as defined on the "Applicant Statement" found on the *"About Us"* or *"Employment Opportunities"* tab. All postings fully explain the job responsibilities and minimum requirements to be considered for the position. Many of our jobs have a test component. Only those applicants who are deemed minimally qualified and who pass any applicable tests are permitted to move to the next stage of the application process which includes an interview.

In addition all prospective employees can expect a mandatory criminal history background check, employment and education verification, and post-offer physical, which include drug and alcohol screenings.

Employment selection and related decisions are made without regard to sex, race, age, disability, religion, national origin, color or any other protected class.

**The DRPA is an equal employment opportunity employer.**

© 2022 Delaware River Port Authority | Site Map

EXH. A-9

Civ. No. 22-3199
E.D. Pa.



DELAWARE RIVER PORT AUTHORITY
of Pennsylvania and New Jersey

HOME | EMPLOYMENT OPPORTUNITIES | ABOUT US

Employment Opportunities

Search Current Openings

EMPLOYEES Internal Job Openings

Applicant Statement

Create a Job Agent

Update Your Profile

Update Job Agent

STEWARDSHIP. SERVICE. COMMUNITY.

## Employment Process

DRPA and PATCO currently employs approximately 861 employees in various union and non-union positions throughout the Authority. If you are interested in applying for any vacant position with DRPA or PATCO, you first **must** complete in full the **online pre-application form.**

**If you meet the minimum qualifications of the position for which you are applying, you will be contacted and asked to complete the full online application.**

Remember, you first **must** complete the **online pre-application form.** Resumes also should be uploaded at this time.

In addition, applicants are required to sign an "Applicant Statement" certifying that they are not related to any current or former Commissioner or Officer or any current employee of DRPA or PATCO as defined on the "Applicant Statement" found on the *"About Us"* or *"Employment Opportunities"* tab. All postings fully explain the job responsibilities and minimum requirements to be considered for the position. Many of our jobs have a test component. Only those applicants who are deemed minimally qualified and who pass any applicable tests are permitted to move to the next stage of the application process which includes an interview.

In addition all prospective employees can expect a mandatory criminal history background check, employment and education verification, and post-offer physical, which include drug and alcohol screenings.

Employment selection and related decisions are made without regard to sex, race, age, disability, religion, national origin, color or any other protected class.

**The DRPA is an equal employment opportunity employer.**

© 2022 Delaware River Port Authority | Site Map

EXH. A-9

Civ. No. 22-3199
E.D. Pa.

**Collective Bargaining**
**AGREEMENT**

Between the

**PORT AUTHORITY TRANSIT CORPORATION**

**and**

**TEAMSTERS LOCAL UNION NO. 676**
***Affiliated with the***
***International Brotherhood of Teamsters, AFL-CIO***

EXH. A-10

CIV. NO. 22-3199
E.D. Pa.

**EFFECTIVE DATE**

**January 1, 2018**
**until and including**
**December 31, 2020**

**EXECUTION DATE**

1/17/2020

SL1 1565071v4 030104.00137

EXH. A-10

Civ. No. 22-3199
E.D. Pa.

**SUMMARY STATEMENT**

**ITEM NO.: PATCO-18-045**

**SUBJECT: Collective Bargaining Agreement between PATCO and Teamsters**

**COMMITTEE MEETING:** **New Business**

**COMMITTEE DATE:** **N/A**

**BOARD ACTION DATE:** **December 5, 2018**

**PROPOSAL:** That the Board of the Port Authority Transit Corporation (PATCO) approve the economic provisions and terms delineated in Exhibit A for the DRPA's expired labor contract with Teamsters Union Local No. 676 (Teamsters), and authorize staff to negotiate the remaining terms of the Collective Bargaining Agreement.

**BACKGROUND:** Teamsters, currently representing (212) PATCO employees, has been working under an expired contract since December 31, 2017;

The essential economic terms of the agreement are summarized in Attachment A hereto.

**SUMMARY:**

| | |
|---|---|
| Amount: | N/A |
| Source of Funds: | General Funds |
| Operating Budget: | PATCO Operating Budget (Payroll and Employee Services expenses) |
| Other Fund Sources: | None |
| Duration of Contract: | See Exhibit A; through December 31, 2020 |
| Other Parties Involved: | Teamsters Local Union No. 676 |

Exh. A-10
Civ. No. 22-3199
E.D. Pa.

## APPENDIX I - WAGES

| Rep Grade | PATCO Position | Effective 2018 (Effective 1/1/2018-12/31/2019) (4%) 85% | 90% | 95% | BASE | Effective 2020 (Effective 1/1/20-12/31/2020) (2%) 85% | 90% | 95% | BASE |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | $ 19.32 | $ 20.46 | $ 21.59 | $ 22.73 | $ 19.71 | $ 20.87 | $ 22.03 | $ 23.18 |
| 2 | Custodian | $ 19.86 | $ 21.02 | $ 22.19 | $ 23.36 | $ 20.26 | $ 21.45 | $ 22.64 | $ 23.83 |
| 3 | | $ 20.37 | $ 21.57 | $ 22.77 | $ 23.97 | $ 20.78 | $ 22.01 | $ 23.23 | $ 24.45 |
| 4 | | $ 20.91 | $ 22.14 | $ 23.37 | $ 24.60 | $ 21.33 | $ 22.58 | $ 23.84 | $ 25.09 |
| 5 | Apprentice I | $ 21.45 | $ 22.72 | $ 23.98 | $ 25.24 | $ 21.88 | $ 23.17 | $ 24.45 | $ 25.74 |
| 6 | MW Machine Op 2/C | $ 22.00 | $ 23.29 | $ 24.59 | $ 25.88 | $ 22.44 | $ 23.76 | $ 25.08 | $ 26.40 |
| 7 | | $ 22.44 | $ 23.76 | $ 25.08 | $ 26.40 | $ 22.89 | $ 24.24 | $ 25.58 | $ 26.93 |
| 8 | Apprentice 2, Revenue Collector, Track Mechanic, Groundskeeper | $ 22.96 | $ 24.31 | $ 25.66 | $ 27.01 | $ 23.42 | $ 24.80 | $ 26.17 | $ 27.55 |
| 9 | | $ 23.69 | $ 25.08 | $ 26.48 | $ 27.87 | $ 24.17 | $ 25.59 | $ 27.01 | $ 28.43 |
| 10 | MW Operator 1/C | $ 24.28 | $ 25.70 | $ 27.13 | $ 28.56 | $ 24.76 | $ 26.22 | $ 27.67 | $ 29.13 |
| 11 | Equipment Repairman, Apprentice 3 | $ 24.74 | $ 26.20 | $ 27.65 | $ 29.11 | $ 25.24 | $ 26.72 | $ 28.21 | $ 29.69 |
| 12 | Train Operator | $ 25.53 | $ 27.04 | $ 28.54 | $ 30.04 | $ 26.04 | $ 27.58 | $ 29.11 | $ 30.64 |
| 12a | Train Operator - Instructor | $ 28.46 | $ 30.13 | $ 31.81 | $ 33.48 | $ 29.03 | $ 30.74 | $ 32.44 | $ 34.15 |
| 12b | Train Operator - Auxiliary Supervisor | $ 29.66 | $ 31.40 | $ 33.15 | $ 34.89 | $ 30.25 | $ 32.03 | $ 33.81 | $ 35.59 |

Exh A-10

Civ. No. 22-3199
E.D. Pa.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13 | Equipment Mechanic, Machinist, Welder | $ 27.77 | $ 29.40 | $ 31.04 | $ 32.67 | $ 28.32 | $ 29.99 | $ 31.65 | $ 33.32 |
| 14 | Equipment Electrician, Mechanical & Structural Technician, Machinist 1/C | $ 28.46 | $ 30.13 | $ 31.81 | $ 33.48 | $ 29.03 | $ 30.74 | $ 32.44 | $ 34.15 |
| 15 | Maintainer, (Equipment Electrician A/C) - HVAC | $ 29.08 | $ 30.79 | $ 32.50 | $ 34.21 | $ 29.66 | $ 31.40 | $ 33.15 | $ 34.89 |
| 16 | Electronic Technician, Machinist 1/C Toolmaker, Maint. Mechanic 1/C | $ 29.66 | $ 31.40 | $ 33.15 | $ 34.89 | $ 30.25 | $ 32.03 | $ 33.81 | $ 35.59 |
| 17 | Car Monitoring & Diagnostic System Technician | $ 30.48 | $ 32.27 | $ 34.07 | $ 35.86 | $ 31.09 | $ 32.92 | $ 34.75 | $ 36.58 |
| 18 | | $ 31.28 | $ 33.12 | $ 34.96 | $ 36.80 | $ 31.91 | $ 33.79 | $ 35.66 | $ 37.54 |