IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASON L. BROWN,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 22-3199** |
| | : | |
| **PORT AUTHORITY TRANSIT** | : | |
| **CORPORATION**, *et al.*, | : | |
| Defendants. | : | |

<u>MEMORANDUM</u>

**Younge, J.**                                                                                                   **July 24, 2023**

### I.    FACTUAL BACKGROUND

Plaintiff Jason L. Brown, a custodial employee, has filed this civil action against his employer, the Port Authority Transportation Company (hereinafter, "PATCO")—a wholly-owned subsidiary of the Delaware River Port Authority (hereinafter, "DRPA")—in connection with alleged discrimination by Plaintiff's employer on the basis of Plaintiff's race. (Third Amended Complaint (hereinafter, "TAC"), p. 2, ECF No. 33; Mot. to Dis., p. 6, ECF No. 35.) Although Plaintiff's claims are not entirely clear, they appear to relate to Defendants' (1) discrimination on the basis of Plaintiff's race, (2) retaliation against Plaintiff, and (3) creation of a hostile work environment. (TAC, pp. 3-14, ECF No. 33.) Plaintiff's claims are brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e2-3, and Plaintiff seeks damages under 42 U.S.C. § 1981a. (TAC, pp. 1-2, ECF No. 33.) Plaintiff seeks $800,000 in damages for three claims against PATCO, $600,000 in damages for one claim against DRPA, and $500,000 in damages for one claim against both PATCO and DRPA. (TAC, pp. 3-14, ECF No. 33.) Currently before this Court is Defendants' Motion to Dismiss, wherein Defendants argue that Plaintiff's pleadings have failed to allege sufficient facts to support any Title VII claim. (Mot. to Dis., p. 6, ECF No. 35.) This Court will also consider Plaintiff's Motion for Judgment on the Pleadings (Mot. for J. on P., ECF

1

No. 36) and Defendants' Response to Plaintiff's Motion for Judgment on the Pleadings. (Resp., ECF No. 37.)

## II.     LEGAL STANDARD: 12(b)(6) MOTION TO DISMISS

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the U.S. Supreme Court considered in detail the proper standard for a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  As the Third Circuit has instructed in line with the Supreme Court's decision in *Iqbal*, "[t]o survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678 (quotation and citation omitted)).  For a claim to be "plausible on its face," it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This Court must thus examine Plaintiff's claims to determine whether it can infer that Defendants could be held liable for the alleged misconduct.

## III.    DISCUSSION: 12(b)(6) MOTION TO DISMISS

As previously discussed, Plaintiff appears to assert three claims against Defendants: (1) discrimination on the basis of Plaintiff's race, (2) retaliation against Plaintiff, and (3) creation of a hostile work environment.  This Court agrees with Defendants that Plaintiff's various causes of action against Defendants are difficult to decipher and organize—not to mention the challenge of mapping Plaintiff's allegations onto the various elements of each claim.  Therefore, this Court will grant Defendants' Motion to Dismiss for failure to state a claim.  Furthermore, Plaintiff has had four opportunities over the course of approximately nine months to allege facts in his complaint that would support the elements of each of his claims—the initial Complaint (ECF No. 1) and three

Amended Complaints (ECF No. 13, ECF No. 19, ECF No. 33). As Defendant's Motion to Dismiss accurately states, "the TAC does not cure the issues raised relating to any of its predecessors," and instead is "largely a reiteration of counts [Plaintiff] asserted in his previous complaints." (Mot. to Dis., p. 6, ECF No. 35.) Accordingly, this Court will dismiss Plaintiff's claims with prejudice, as Plaintiff has been granted ample opportunity to allege grounds for relief, yet Plaintiff has repeatedly fallen short of the standard set by *Iqbal*, as this Court's analysis below reveals.

### A. Title VII Racial Discrimination Claim

#### 1. Stated Allegations

Against Defendant PATCO, Plaintiff generally alleges that Defendant "used work practices that were discriminatory towards my color." (TAC, p. 3, ECF No. 33.) Namely, Plaintiff alleges that while working for Defendant PATCO, his employee identification card at one point did not work; when Defendant then requested that Plaintiff place a sticker on his new identification card, this caused Plaintiff "emotional distress and mental anguish." (TAC, p. 4, ECF No. 33.) In Plaintiff's words, this incident and the harm against him can be summarized as follows:

> I had already faced the inconvenience of having the conditions of my employment discriminated upon when my id card became restricted to not working at the timeclock to record and track my daily work schedule production. To then not have my identity placed on my new id card is unwelcoming, but to expect me to put my identity on there by sticker is even more of an unwelcoming behavior and harassment towards my color as an individual within my job description.

(TAC, p. 5, ECF No. 33.) Also against Defendant PATCO, Plaintiff claims that Defendant discriminates on the basis of race in allocating specific assignments on the work floor to one individual rather than rotating assignments. As Plaintiff puts it, "[b]ecause management could prove that my coworkers had a discrepancy about how job assignment had shifted to one person,

instead of a rotation, there is evidence that race and color discrimination is present in the work environment." (TAC, p. 10, ECF No. 33.)

Against Defendant DRPA, Plaintiff points to Defendant's display of Plaintiff's personal e-mail on a physical mail correspondence as an instance of "classif[ying] my employment by my color." (TAC, p. 12, ECF No. 33; Compl., p. 27, ECF No. 1.)  Plaintiff appears to connect this incident to communications he had with management of PATCO and DRPA about unspecified "situations" and "the work environment" more generally. (TAC, pp. 11-12, ECF No. 33; Compl., pp. 17-19, ECF No. 1.)  In Plaintiff's view, the display of his personal email on a mail communication was "harassing" and allegedly "inflict[ed] emotional distress," constituting "intentional interference being directed toward me and my color." (TAC, p. 12, ECF No. 33.)

Against both PATCO and DRPA, Plaintiff alleges generally that "[c]olor and race are being used to systemically repress employment and create a sense of deflection towards equal opportunity in the workplace." (TAC, p. 13, ECF No. 33.)  This is seen in shutdowns of employee databases, limited opportunities for educational training, and Defendants' use of "an unauthorized artificial intelligence" in communications. (TAC, p. 13, ECF No. 33.)  Plaintiff claims that "color was reflected" in these occurrences, making the work environment "discriminatory." (TAC, pp. 13-14, ECF No. 33.)

2. <u>Legal Standard: Title VII Employment Discrimination</u>

Title VII prohibits employment discrimination based on an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2.  But the mere allegation that discrimination against an individual has occurred due to their race does not make it true; Plaintiff must plead more than "mere conclusory statements" to survive a motion to dismiss. *Iqbal* 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555).  In the Title VII context, the U.S. Supreme Court has instructed that

"the ordinary rules for assessing the sufficiency of a complaint apply" at the motion to dismiss stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). In other words, the standard articulated in *Iqbal* applies here, not the *McDonnell Douglas* burden-shifting framework, because this case is at the motion to dismiss stage—not the motion for summary judgment stage. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Green v. McDonnell-Douglas Corp.*, 381 F.Supp. 846 (E.D. Mo. 1970). Accordingly, for Plaintiff to survive Defendants' motion to dismiss, Plaintiff's claim, accepted as true, must be "plausible on its face;" it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Stated differently, Plaintiff must plead facts showing that: "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

### 3. Plaintiff's Claim is not "Plausible on its Face"

Plaintiff's claim is not plausible on its face because Plaintiff's allegations, even if taken as true, would not permit this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Defendant PATCO's request that Plaintiff place a sticker on a replacement employee identification card appears to be part of Defendant's general practice of employee recordkeeping and security. This is confirmed by a review of "Exhibits A-1, A-2, and A-3"—documents Plaintiff attached to Plaintiff's original Complaint—which Plaintiff cites in Plaintiff's Third Amended Complaint; these communications reveal that Plaintiff's identification card malfunctioned and, as a result, was promptly and professionally replaced. (Compl., pp. 11-19, ECF No. 1; TAC, pp. 3-6, ECF No. 33.)

5

Even taking Plaintiff's claim as true that Plaintiff "fel[t] a sense of harassment" at being asked to place a sticker on his replacement identification card, this affective response alone is insufficient to permit this Court to reasonably infer that Defendant PATCO is liable under Title VII. (TAC, p. 4, ECF No. 33.)

Similarly, Defendant PATCO's decision to assign certain work to one individual—to Plaintiff—rather than assign work on a rotation also does not permit this Court to reasonably infer that PATCO is liable for any alleged misconduct. As the Third Circuit has instructed, a pleading that only "a single member of the non-protected class" was treated more favorably than a member of Plaintiff's protected class does not necessarily compel a court to find an "inference of discrimination." *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (1998). But here, Plaintiff does not allege specifically that individuals of one race were preferentially and discriminatorily granted specific floor assignments over individuals of another race; in other words, a non-protected class was *not* treated more favorably than a protected class because no non-protected class was involved at all. Instead, Plaintiff asserts that colleagues of Plaintiff's *own* protected class complained to management about Plaintiff's "floor assignment" (which Plaintiff seemingly concedes was a more favorable or desirable assignment). (TAC, pp. 9-11, ECF No. 33.) Therefore, Plaintiff's claims—even taken as true—do not permit this Court to infer that Plaintiff has been impermissibly discriminated against under Title VII.

Plaintiff's allegation against DRPA—that Defendant's display of Plaintiff's personal e-mail on a physical mail correspondence discriminated against Plaintiff's race—also is insufficient to permit this Court to infer the presence of discrimination. Nowhere on the envelope is Plaintiff's race even mentioned. (Compl., p. 27, ECF No. 1.) Plaintiff's statement that DRPA's inclusion of the e-mail address "classified my employment by my color" is "conclusory;" accordingly, it does

not allow this court to infer discrimination against Plaintiff's protected class. *Iqbal*, 556 U.S. 662, 663; *Twombly*, 550 U.S. 544, 556-57.

Lastly, Plaintiff's allegation against both PATCO and DRPA—that employee databases shut down, opportunities for educational training were limited, and Defendants used "an unauthorized artificial intelligence" in communications—similarly fail to permit this Court to infer the presence of discrimination. (TAC, p. 13, ECF No. 33.) Like Plaintiff's pleading that his e-mail address appeared on the outside of an envelope, Plaintiff here also does not explain the nexus between these commonplace business occurrences and racial discrimination. Plaintiff does not plead, for instance, that educational trainings were denied to members of Plaintiff's protected class while the same trainings were granted to members of a non-protected class. Once again, Plaintiff's conclusory claim that "color is reflected" in these occurrences cannot permit this Court to infer that Defendant impermissibly discriminates on the basis of Plaintiff's race. (TAC, pp. 13-14, ECF No. 33.) Therefore, in sum, because none of Plaintiff's allegations of illegal discrimination on the basis of race "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Plaintiff's claim is accordingly dismissed. *Iqbal*, 556 U.S. at 678.

### B. Title VII Retaliation Claim

#### 1. Stated Allegations

Plaintiff's second Title VII claim is made against PATCO for retaliation. Plaintiff alleges that, in response to his department director denying Plaintiff's enrollment in a course eligible for tuition reimbursement, Plaintiff received an "unnecessary email that reflects unlawful classification of [his] employment and previous deprivation of employment opportunity such as tuition reimbursement." (TAC, pp. 6-7, ECF No. 33.) The email was "retaliatory," in Plaintiff's

view, allegedly occurring because of the director's prior denial of Plaintiff's request to participate in the tuition reimbursement program; further, it was "discriminatory because [Plaintiff has] the option to learn online." (TAC, pp, 7-8, ECF No. 33). To Plaintiff, it "was a racial message requesting me to look around in the department and count the total number of blacks that are tradesmen." (TAC, pp. 8-9, ECF No. 33.)

      As evidence of Plaintiff's denial in the tuition-reimbursed course, Plaintiff cites "Exh. A-4" from his original Complaint. (TAC, p. 9, ECF No. 33.) This exhibit consists of an email communication between Plaintiff and an unspecified individual named Tonya M. Little—presumably a member of management or human resources. (Compl., p. 21, ECF No. 1.) Upon Plaintiff's request that his reimbursement form be approved for his desired course, Little responded by stating that Plaintiff needed additional signatures of approval from various management personnel, after which she conveyed that "[w]hen I have everyone's signature, I will email the form to you with approval. Please keep in mind you cannot start a course until you have the signed approval form back." (Compl., p. 21, ECF No. 1.) Furthermore, a prior Exhibit in Plaintiff's original Complaint—"Exh. A-3"—contains a written account of an explanation Plaintiff appears to have received in response to a previous complaint about this "denial." (Compl., p. 19, ECF No. 1.) During that conversation, Plaintiff apparently was reminded of the requirements of PATCO's tuition reimbursement policy, after which Plaintiff "indicated that [he] put the process on hold for now because [he was] planning to move" and "stated that [he was] satisfied with the explanation." (Compl., p. 19, ECF No. 1.)

      As evidence of the retaliatory email for the above-described "denial," Plaintiff cites "Exh. A-5" from Plaintiff's original Complaint. (TAC, p. 7, 9, ECF No. 33.) Exhibit A-5 appears to be a welcome email to "the PATCO Car Status Group," which elsewhere in Plaintiff's Complaint is

described as a "strategic initiative to keep all employees informed as to the working status of the train cars and the Equipment Department." (Compl., p. 19, 24, ECF No. 1.)

### 2. Legal Standard: Title VII Retaliation

Title VII's protections against retaliation cover individuals who "opposed any practice made an unlawful employment practice by [Title VII]" and those who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3.  Title VII retaliation claims, like Title VII claims alleging discrimination on the basis of race (see above), are also assessed at the motion to dismiss stage under *Iqbal*, not *McDonnell Douglas*. *Swierkiewicz*, 534 U.S. at 511.  Plaintiff must do more than plead "mere conclusory statements;" Plaintiff's claim must be "plausible on its face" in that it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663, 678. In other words, Plaintiff must plead facts showing that: "(1) [the plaintiff] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [the plaintiff]; and (3) there was a causal connection between [the plaintiff's] participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006), *as amended* (Sept. 13, 2006).

### 3. It is not "plausible on its face" that Plaintiff participated in a "protected activity" under Title VII.

Plaintiff alleges that Plaintiff faced illegal retaliation in the form of an e-mail, which occurred after Plaintiff's department director supposedly denied Plaintiff's enrollment in a course eligible for tuition reimbursement. (TAC, pp. 6-9, ECF No. 33.)  Plaintiff not only mischaracterizes the facts here, but even if Plaintiff's characterizations were accurate, such facts would not entitle Plaintiff to relief because Plaintiff did not engage in a "protected activity." Plaintiff did not

"oppose[] any practice made an unlawful employment practice by [Title VII]" and Plaintiff has not "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3. Receiving an email as a result of being denied tuition reimbursement is not a plausible ground for relief under Title VII. Therefore, Plaintiff's Title VII retaliation claim is dismissed.

### C. Section 1981 Claim: Creation of a Hostile Work Environment

#### 1. Stated Allegations

Finally, Plaintiff alleges that PATCO management permitted Plaintiff's coworkers to create a hostile work environment, which Plaintiff claims arose "due to coworkers who compromised the work environment about assignment." (TAC, p. 9, ECF No. 33.) Specifically, as Plaintiff outlines in his TAC and EEOC Complaint, other coworkers "of similar color and same race [sic]" "complained to [Plaintiff's] manager with regard to assignments," "inquired as to when the rotation [of floor assignments] would restart," and "made comments to [Plaintiff] with regard to [Plaintiff's] work ethic," such as "you're doing too much" and "they're going to expect the same from us." (TAC, p. 9, ECF No. 33; Compl., pp. 9-10, ECF No. 1.) To Plaintiff, such behavior means that "the employer is in violation of [Title VII] because non-management employees are recreating the classification of employees and limiting the privilege of being assigned to a certain assignment." (TAC, pp. 9-10, ECF No. 33.) Such behavior from Plaintiff's colleagues also allegedly constitutes evidence of discrimination by Defendants, in Plaintiff's view, because Plaintiff "shared with counsel of the defendants a list of names who individuals [sic] who could confirm or deny the allegations set forth in this claim and other claims previously mentioned," yet Plaintiff remains unaware of any actions taken by Defendants as a result of his interrogatory responses. (TAC, p. 10, ECF No. 33.)

### 2. Legal Standard: Section 1981 Hostile Work Environment Claim

As the Third Circuit has outlined, the elements of a § 1981 hostile work environment claim are as follows: "1) the employee suffered intentional discrimination because of his/her [race], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability [meaning the employer is responsible]." *Castleberry v. STI Grp.*, 863 F.3d 259, 262 (3d Cir. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted)). Under *Iqbal*, Plaintiff must allege facts that *plausibly* show that Plaintiff satisfies each element. 556 U.S. at 678.

### 3. Plaintiff's alleged facts do not plausibly suggest Defendants are liable for a hostile work environment under Section 1981.

Taking the facts alleged by Plaintiff as true, Plaintiff fails to plausibly suggest he can meet any of the first four elements of a hostile work environment claim under § 1981. Because Plaintiff cannot establish that a hostile work environment existed in the first place, this Court declines to address the fifth element of a § 1981 hostile work environment claim—whether the employer is liable under *respondeat superior*.

For the first element, Plaintiff provides no evidence beyond Plaintiff's own conclusory statements that his colleagues' complaints were intentionally made because of Plaintiff's race. Instead, the statements' contents, as alleged, solely concerned floor assignments and Plaintiff's "work ethic." (TAC, p. 9, ECF No. 33; Compl., pp. 9-10, ECF No. 1.) To infer that such statements truly concerned Plaintiff's race would be an impermissible leap of reasoning for this Court. While Plaintiff's failure to plead facts that plausibly suggest Defendants are liable for the first prong of a hostile work environment is alone sufficient to dismiss Plaintiff's claim, this Court will nevertheless assess Plaintiff's pleading of the other elements of a hostile work environment claim.

For the second element, Plaintiff provides no evidence that his colleagues' statements—if considered "discrimination"—were "severe or pervasive." *Castleberry*, 863 F.3d at 262. When assessing whether a hostile work environment is present, "analysis must concentrate not on individual incidents, but on the overall scenario." *Caver v. City of Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005). Taken both individually and in their totality, the alleged statements, which solely concerned work assignments and Plaintiff's work ethic, are not sufficiently severe to establish a hostile work environment.

For the third element, Plaintiff does not provide evidence beyond conclusory statements that he was "detrimentally affected" by his colleagues' statements. Although Plaintiff claims he experienced "emotional distress and mental anguish" and describes his colleagues' statements as "evil," Plaintiff presented no evidence that he suffered any psychological distress, that his ability to perform his job was impaired, or that he suffered financially as a result of the statements. (TAC, pp. 9-11, ECF No. 33.)

Similarly, for the fourth element, this Court disagrees that an objectively reasonable person in similar circumstances would be offended by the alleged incidents. As described above, the statements were made by members of the same race as Plaintiff and did not mention Plaintiff's race at all. (TAC, p. 9, ECF No. 33; Compl., pp. 9-10, ECF No. 1.) Plaintiff provides no evidence beyond conclusory statements to suggest that his colleagues' comments were truly about Plaintiff's race, and it is not for this Court to find such implications where none have been alleged.

In sum, Plaintiff's pleadings do not allege sufficient facts to plausibly demonstrate that Plaintiff meets each element to establish a hostile work environment under § 1981. Therefore, Defendants' motion to dismiss Plaintiff's claim of a hostile work environment with respect to

Plaintiff's race is granted. All of Plaintiff's claims are thus dismissed under Defendants' Rule 12(b)(6) motion to dismiss.

### IV. 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS

In response to Defendants' Rule 12(b)(6) motion to dismiss, Plaintiff filed a Rule 12(c) motion for judgment on the pleadings. According to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). In this case, as Defendants correctly note in their Response to Plaintiff's Motion for Judgment on the Pleadings (ECF No. 37), the pleadings are not "closed" because Defendant has not filed an answer. *See Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) ("The pleadings are closed after an answer is filed, along with a reply to any additional claims asserted in the answer.") (referencing *Austin Powder Co. v. Knorr Contracting, Inc.*, No. 3:08-CV-1428, 2009 WL 773695, at *1 (M.D. Pa. Mar. 20, 2009)); *see also* Fed. R. Civ. P. 7(a) (describing pleadings as a complaint, some sort of answer to a complaint, counterclaim, etc., and—if ordered by the court—a reply to an answer). Thus, Plaintiff's motion for judgment on the pleadings is hereby denied for two reasons: (1) the motion is premature as the pleadings are not yet "closed"; and (2) the motion has essentially been rendered moot in light of this Memorandum, and accompanying Order, granting Defendants' motion to dismiss.

### V. PRECLUDING LEAVE TO AMEND COMPLAINT

When a motion to dismiss is granted, the court must then decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments, suggesting that leave to amend should be freely granted. *See, e.g.*, *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990). However, a court need not grant leave to amend when it would be an exercise in futility. *City of Cambridge Ret. Sys. v. Altisource Asset*

*Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

For the reasons identified above, Plaintiff has failed to plead facts sufficient to establish a plausible claim for relief in what is now Plaintiff's fourth opportunity to do so over approximately nine months (Plaintiff filed an original Complaint and three Amended Complaints). This Court, in its April 17, 2023 Order (ECF No. 31), explicitly warned that despite the interest in permitting amendment when justice requires it, "Plaintiff's filing of a Third Amended Complaint will be the final pleading amendment permitted by this Court" and any "[f]ailure to cure the purported deficiencies in a Third Amended Complaint will result in dismissal of the . . . case with prejudice." (Order on Mot. to Dis., p. 1 n. 1, ECF No. 31.) Given the Court's determination in this Memorandum and this Court's previous Order, a leave to amend would be futile. This Court will not grant Plaintiff another chance to amend his complaint.

## VI.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is hereby granted. Relatedly, in light of this Memorandum, and accompanying Order, dismissing this action with prejudice, Defendants' motion to stay this case is denied as moot.

An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

*/s/ John Milton Younge*
**JUDGE JOHN MILTON YOUNGE**